## ANDERSON v. ANDERSON COOK CO. Inc.

Industrial Commission.

October 19, 1954.

Paty, Downey & Paty, West Palm Beach, for claimant.

Brown, Dean & Hill, Miami, for employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

On January 12, 1954 claimant Walter T. Anderson sustained injuries in an automobile-train collision at the crossing of the Florida East Coast Railway tracks and Ardmore Road in West Palm Beach as a result of which he was temporarily totally disabled until February 1, 1954 and incurred expenses for medical treatment and hospitalization. At the time of his injury he was associated as a bond salesman with Anderson Cook Co., Inc., an investment company dealing principally in municipal bonds located in Palm Beach.

The insurance carrier for Anderson Cook Co., Inc. controverts liability contending—(1) that he was not an employee of Anderson Cook Co., Inc. within the meaning of the Act; and (2) that

even if he be considered an employee, his accident did not arise out of and in the course of his employment.

The capital stock of Anderson Cook Co., Inc. was owned by three persons—Anderson, Kenneth Cook (who was riding with the claimant at the time of the accident and was fatally injured) and Karl Griffin, each of whom owned 100 shares. Anderson was president of the company, Cook was a vice-president, and they both served on the board of directors. Amos E. Jackson, an attorney representing Griffin's interests, was the third and remaining member of the board. Anderson and Cook (who acted as a bond salesman and office manager) were each paid salaries of $400 per month for their services. No compensation was paid for the services of the officers or directors, as such. The company took social security and withholding tax deductions from Anderson's salary. The carrier advances the theory that since Anderson and Cook each owned one-third of the corporation's stock, Anderson could not be fired by the board of directors. This argument presupposes that Anderson was inseparable from Cook, in Siamese-twin fashion, which is not supported by the record. Any officer or employee of the company, including Anderson, could be removed by a majority vote of the directors.

The carrier contends that although operated as a corporation the business was in reality a partnership between Anderson, Cook and Griffin, the latter being a silent partner. The evidence, summarized above, does not sustain that contention.

The testimony showed that although Anderson, as president and a member of the board of directors, had an important voice in the management of the company, he was nevertheless a company employee.

The defense that Anderson's injury did not arise out of and in the course of his employment is based on the contention that the accident occurred while he was en route to work, and before he reached the employer's premises, and further that the purpose of the trip related to his duties as a corporation executive, rather than an employee. The testimony showed that his duties were not confined to the company's Palm Beach office, but required him to travel extensively. He did not maintain office hours. On the morning the accident occurred he drove to Cook's house and picked him up, planning to proceed to the offices of the company's attorneys in the business district of West Palm Beach, and then to the county courthouse and the city hall, in connection with certain company business. The accident occurred while they were en route to the downtown area. Under these circumstances he was not

subject to the familiar "going and coming" rule, since he was on a special mission for the benefit of the employer company. His injury must be held compensable because it occurred "within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it." See Sweat v. Allen, 200 So. 348. As to the remaining point, the evidence showed that his intended visit to the offices of the company's attorneys did pertain to his functions as an executive officer of the company—their trip to the business district, however, *also* involved visits to the city hall and the county courthouse, *in connection with their ordinary duties as bond salesmen,* so that the trip was associated with the requirements of their work as company employees. In discussing this question, Larson on Workmen's Compensation Law, section 54.21, states—

> It is quite common, however, especially in small corporations whose demands upon their officers take only a small fraction of their time, to find that the officers also discharge duties which, if performed by anyone else, would unquestionably confer employee status. In such cases, when the normal incidents of employment attend the performance of the non-executive work, it is uniformly held that the compensation act applies. The clearest instances are those * * * [of] a president and principal stockholder doing selling, manual work, and the like, a secretary-treasurer-director-stockholder doing collection work, or an officer doing sales work on the road or behind a counter. In addition, the vast majority of the cases have awarded compensation even when the employment duties were of a supervisory character, such as those of a general manager, superintendent of a department, foreman, or superintendent of construction, since these are all jobs that, in ordinary circumstances, would make the holder an employee.

The deputy commissioner finds that—1. Claimant was an employee of Anderson Cook Co., Inc. at the time of his injury. 2. His accident arose out of and in the course of his employment with Anderson Cook Co., Inc. 3. His average weekly wages were $94.23. 4. His injury involved expenses amounting to $244.05 for hospitalization, $495 for medical and surgical treatment and $2.93 for medicines, and these expenses are properly allowable as reasonable. 5. The sum of $200 is a reasonable fee for his attorneys in this proceeding.

It is ordered that the employer, by and through its insurance carrier, Highway Casualty Co., pay—1. To the claimant, compensation at the rate of $35 per week for the period of his temporary total disability from January 12, 1954 to February 1, 1954, less the 4-day waiting period provided by law. 2. To the claimant the sum of $741.98, the expense of his remedial treatment and care. 3. To Paty, Downey & Paty, $200 for legal services in claimant's behalf.